IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

| | |
|---|---|
| FRED D. GRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | CASE NO.: CV-2006-68 |
| ) | |
| METROPOLITAN PROPERTY AND ) | |
| CASUALTY INSURANCE COMPANY, ) | |
| CHARLIE E. HARDY, As Agent ) | |
| For Metropolitan Property And ) | |
| Casualty Insurance Company, ) | |
| ) | |
| Defendants. | |

## COMPLAINT

1. Plaintiff, Fred D. Gray (sometimes herein referred to as Gray) is over the age of nineteen (19) years and is a resident citizen of Macon County, Alabama.

2. Defendant, Metropolitan Property and Casualty Insurance Company (herein referred to as Metropolitan) is a foreign insurance corporation licensed to do business in the State of Alabama, and does business by agent in Macon County, Alabama.

3. Defendant Charlie E. Hardy (sometimes herein referred to as Hardy) is over the age of nineteen (19) years and is, upon information and belief, a resident of Macon County and the State of Alabama. At all times material to this complaint, Defendant Hardy was an agent of Defendant Metropolitan.

4. The term "Defendants" as used herein shall mean Metropolitan Property and Casualty Insurance Company and Charlie E. Hardy, collectively.

## FACTS

5. Plaintiff has been an insured under a homeowner's policy of Metropolitan for more than fifteen years. Hardy initially solicited and wrote the first policy. At that time and at

## EXHIBIT A

each renewal period thereafter, including the policy at issue in this case, Hardy assured Gray and his late wife, during her lifetime, that in the event of a loss he would personally see to it that the claim would be immediately investigated, and that any loss sustained would be paid immediately.

6. At all times covered by the events set forth in this complaint, Metropolitan issued a Valuable Insurance Protection Plus Homeowners Policy to Fred D. Gray as named insured, bearing policy number 4232617070. The policy period was December 7, 2003 through December 7, 2004. The policy provided homeowners coverage for Plaintiff's residence located at 1005 E. Lakeshore Drive, Tuskegee, Alabama 36083. The policy provided coverage for personal property, including personal property of the plaintiff located any where in the world, subject to certain limitations and exclusions as set forth in the policy.

7. On or about February 10, 2004, a fire occurred in a building on Eastside Street that housed The Tuskegee News and Masonic Lodge. The building was adjacent to the law offices of Gray, Langford, Sapp, McGowan, Gray & Nathanson, located at 108 Eastside Street and 118 Eastside Street, Tuskegee, Alabama 36083. The fire did not begin in property owned by the Plaintiff. It spread from the building where it started into the two adjacent buildings owned by the Plaintiff, who is the senior partner in the law firm of Gray, Langford, Sapp, McGowan, Gray & Nathanson.

8. In addition to the law firm having its offices in said buildings, there was another tenant in said building. Said buildings were also used for the purpose of storing and maintaining personal property owned by Gray. A substantial portion of said property, which was owned by Gray, but had no relation to the law firm or any business activities, was personal property of the Plaintiff being stored in the building.

9. The three buildings referred to above were completely destroyed by fire. Personal property that belonged to Plaintiff was also destroyed by fire. Said personal property was insured by Metropolitan under the insurance policy referred to above.

10. On February 10, 2004, during the time the buildings were burning, Plaintiff had a conversation with Defendant Charlie E. Hardy, who was present and who had personal knowledge of the fire and personal knowledge of the loss suffered by Plaintiff. Plaintiff orally notified Defendant Hardy of the loss. Hardy assured Gray that he would personally, expeditiously, investigate and settle the claim for the personal property lost by Gray and covered by the policy which Hardy caused Metropolitan to insure.

11. On about February 17, 2004, Plaintiff filed a claim under the Value Insurance Protection Plan homeowner's policy issued by Metropolitan on the loss that occurred to Plaintiff's personal property, which was covered by the policy.

12. On or about February 17, 2004, Amy Bruggeman from Tampa, Florida, a claims adjustor for Defendant, called Plaintiff, acknowledged receipt of the claim and assigned a claim number. She also promised to expeditiously investigate the claim. On the same day, by letter dated February 17, 2004, the said Amy Bruggeman acknowledged receipt of the claim. Plaintiff never heard anything further from Amy Bruggeman.

13. Subsequent thereto, Plaintiff received a phone call from a person who identified himself as "Ewell Hart", an adjustor for Metropolitan in St. Louis, Missouri, indicating he had been assigned this claim to adjust, and that the claim would be adjusted expeditiously. Gray never heard anything further from Ewell Hart.

14. On or about May 25, 2004, Plaintiff sent a copy of a detailed memorandum addressed to Ms. Wanda Retherford, State Farm Insurance Company (insurer on the building)

and Metropolitan Insurance Company, Plaintiff's homeowner's carrier, in which it set forth in detail the statement of the claim, list of all property, including the personal property located in the building which Plaintiff claims is covered under his homeowners insurance policy.

15. Months after Gray received the telephone call from Ewell Hart, he was contacted by Kathleen Schrader, from Tampa, Florida who stated the claim had been referred to her to adjust. Ms. Schrader said she had not received a copy of the document Plaintiff had previously sent to Metropolitan and State Farm, and requested that Plaintiff send another copy of the information. Plaintiff sent such information by letter dated August 16, 2004. In said letter, Plaintiff requested that Metropolitan pay the maximum amount covered for his personal property loss under his homeowner's policy.

16. From August 2004 to October 2004, Plaintiff received no response to his letter of August 16, 2004. On October 25, 2004, Plaintiff wrote to Kathleen Schrader stating he had sent information to her on August 16, 2004, and had not received a response. Plaintiff requested of Ms. Schrader to hear from her at her earliest convenience. Plaintiff received a letter from Ms. Schrader dated November 2, 2004, in which she acknowledged receipt of Plaintiff's letter, apologized and indicated she would be in contact with Plaintiff later. Plaintiff heard nothing further from Ms. Schrader.

17. On November 3, 2004, he received a letter from another claims agent in another state, Kevin Clingenpeel. Mr. Clingenpeel stated he was a senior claims adjustor, located in Charlotte, North Carolina. He implied in his letter that the information he has was insufficient and stated, "unfortunately this information is unclear". He requested additional information.

18. In a letter dated December 7, 2004, Plaintiff sent the requested information to Mr. Clingenpeel. In a letter from Clingenpeel dated January 25, 2005 offering $20,000 in full settlement of the claim. By letter dated February 28, 2005, Plaintiff rejected the offer.

19. Plaintiff received no further letters from Clingenpeel.

20. On May 13, 2005 Gray received a letter from Ralph D. Gaines, III, an attorney representing Metropolitan, offering to settle the claim for $21,821.55. Plaintiff rejected Mr. Gaines's increase of $1,821.55, by letter dated June 2, 2005.

21. Subsequent thereto, Metropolitan demanded that Plaintiff submit himself to oral examination under oath. Said examination was to be conducted by Attorney Gaines. The parties agreed that the examination be held on December 28, 2005. Plaintiff agreed to such examination on the condition that Metropolitan would supply to Plaintiff a copy of the testimony immediately upon completion without cost to Gray.

22. On the 28th of December, 2005, Mr. Gaines did not conduct the examination, he sent his law partner, Daniel S. Wolter. Plaintiff submitted to oral testimony under oath.

23. Metropolitan has failed and refused to deliver to Plaintiff a copy of his examination under oath. Metropolitan's conduct in handling this claim has been harassing and frustrating to Plaintiff.

24. There were approximately five insurance companies that carried coverage on personal property and business property located in the structures destroyed by fire. Most of the companies had homeowner's coverage for members of the law firm. Each of these companies has resolved claims without litigation, and without delay, except Metropolitan.

25. Defendants failed to expeditiously investigate the claim and to negotiate a settlement of the claim in good faith.

26. Defendants purpose of having Gray deal with six different persons, in four states, over a period of two years, was an attempt to prolong and delay resolution of Plaintiff's claim, and an attempt to compel Plaintiff to settle his claim for an amount less than what Metropolitan contracted to pay under the terms of the policy.

27. Metropolitan has acted unreasonably, arbitrarily and capriciously in subjecting Gray to submit to oral sworn testimony and then refused to supply him with a copy of his testimony.

28. Hardy has failed to personally see to it that Defendants expeditiously investigated and pay the claim as he represented to Plaintiff and Plaintiff's wife during her lifetime.

29. During the oral examination under oath, Plaintiff in order to protect his interest and to be sure the record was completed, he delivered to Metropolitan all of the documents and materials which he had previously submitted from the date of the fire.

**Count I**
**(Breach of Contract)**

30. The Plaintiff incorporates paragraphs 1-29, as though they were set out here in full.

31. The Plaintiff entered into a contract with Defendants for homeowners insurance.

32. The contract provided coverage from personal property located anywhere in the world.

33. Plaintiff has paid all premiums to Defendant Metropolitan to maintain the insurance coverage for the loss suffered.

34. The Defendants have failed to pay according to the terms of the contract and thus has breached the contract.

35. As a result of the Defendants' breach, the Plaintiff has suffered the following losses:

    a) loss of premiums paid;

    b) loss of benefit of coverage;

    c) loss of more than $282,000.00;

    d) other economic losses;

    e) mental anguish.

Wherefore, the Plaintiff demands judgment against the Defendants for compensatory damages in a sum to be determined by a jury.

## Count II
### (Bad Faith)

36. Plaintiff incorporates paragraphs 1-35 as though they were set out herein in full.

37. Plaintiff submitted a claim to Defendant. Defendant wrongfully and without legal cause, denied Plaintiff's claim and refused to pay said claim. Defendant failed to properly investigate, adjust and pay said claim. Defendant intentionally delayed the resolution of this claim and denied Plaintiff's claim.

38. As a result of Defendant's bad faith refusal to pay, investigate and adjust the claim, Plaintiff has suffered the following damages:

    a) loss of premiums paid;

    b) loss of benefit of coverage;

    c) loss of more than $282,000.00;

    d) other economic losses;

    e) mental anguish.

Wherefore, the Plaintiff demands judgment against the Defendant for compensatory and punitive damages in a sum to be determined by a jury.

### Count III
### (Negligence/Wantonness)

39. Plaintiff incorporates paragraphs 1-38 of the complaint as though they were set out herein in full.

40. Defendant had a duty to properly handle, investigate and pay the claims of Plaintiff.

41. Defendant breached said duty and negligently and wantonly failed to properly handle, investigate and pay Plaintiff's claim.

42. As a direct and proximate cause of Defendants' actions, Plaintiff has suffered the following damages:

    a) loss of premiums paid;

    b) loss of benefit of coverage;

    c) loss of more than $282,000.00;

    d) other economic losses;

    e) mental anguish.

Wherefore, the Plaintiff demands judgment against the Defendant for compensatory and punitive damages in a sum to be determined by a jury.

### Count IV
### (Fraud)

43. Plaintiff incorporates paragraphs 1-42 of the complaint as though they were set out herein in full.

44. Defendant Hardy represented to Gray and his late wife, during her lifetime, that in the event of a loss he would personally see to it that the claim would be immediately investigated, and that any loss sustained would be paid immediately.

45. Hardy represented to Gray that he would personally, expeditiously, investigate and settle the claim for the personal property lost by Gray and covered by the policy which Hardy caused Metropolitan to insure.

46. Defendants representations were false and were made to induce the Plaintiff to continue to maintain insurance with Defendants, to continue to pay premiums and to engage in additional business with Defendants.

47. Plaintiff relied on the representations of Defendants to his detriment.

48. As a direct result of Defendants acts the plaintiff has suffered the following damages:

    a) loss of premiums paid;

    b) loss of benefit of coverage;

    c) loss of more than $282,000.00;

    d) other economic losses;

    e) mental anguish.

Wherefore, the Plaintiff demands judgment against the Defendant for compensatory and punitive damages in a sum to be determined by a jury.

Respectfully submitted,

*Walter E. McGowan*
Walter E. McGowan (MCG 016)

*Stanley F. Gray*
Stanley F. Gray (GRA053)
Attorneys for Plaintiff

OF COUNSEL:
Gray, Langford, Sapp, McGowan,
   Gray & Nathanson
Post Office Box 830239
Tuskegee, Alabama 36083-0239

### JURY DEMAND

PLAINIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES IN THIS CAUSE.

_____
OF COUNSEL