American Court Reporting
toll-free (877) 320-1050

1 (Pages 1 to 4)

## Page 1

EXAMINATION UNDER OATH
OF
FRED GRAY

POLICY NUMBER: 4232617270
CLAIM NUMBER: TAA99152 BL

Examination under oath of FRED GRAY, taken before Gwendolyn P. Timbie, CSR, and Notary Public, State at Large, at the law offices of Gray, Langford, Sapp, McGowan, Gray & Nathanson, on December 28, 2005, commencing at approximately 10:05 a.m.

COURT REPORTER:
Gwendolyn P. Timbie, CSR

## Page 2

```
 1         APPEARANCES
 2
 3  FOR METLIFE:
 4      DANIEL S. WOLTER, Esquire
        Gaines, Wolter & Kinney, P.C.
 5      3500 Blue Lake Drive
        Suite 425
 6      Birmingham, Alabama  35243
 7  FOR MR. GRAY:
 8      STANLEY F. GRAY, Esquire
        Gray, Langford, Sapp, McGowan,
 9         Gray & Nathanson
        108 Eastside Street
10      Tuskegee, Alabama  36083
```

## Page 3

```
 1          LIST OF EXHIBITS
 2  EXHIBIT:                      PAGE NO.
 3  EXHIBIT 1    Policy              7
 4  EXHIBIT 2    Letter             16
 5  EXHIBIT 3    Letter             23
 6  EXHIBIT 4    Correspondence     29
 7  EXHIBIT 5    Letter             78
 8  EXHIBIT 6    Letter             79
 9  EXHIBIT 7    Letter             80
10  EXHIBIT 8    Letter             80
11  EXHIBIT 9    Letter            102
12  EXHIBIT 10   Letter            102
13  EXHIBIT 11   Letter            105
```

## Page 4

```
 1           FRED GRAY,
 2  having been first duly affirmed, was
 3  examined and testified as follows:
 4
 5  EXAMINATION BY MR. WOLTER:
 6      Q    Could you please state your
 7  name?
 8      A    Fred Gray.
 9      Q    Okay, Mr. Gray.  I'm Danny
10  Wolter, and we're here today to take your
11  examination under oath relating to a claim
12  you've made under a MetLife policy of
13  insurance, Policy Number 4232617270.  And
14  that claim is in association with a fire
15  loss that occurred on February 10th of
16  2004; is that correct?
17      A    That's correct.
18      Q    And you understand that you're
19  under oath, and this examination is being
20  taken pursuant to the terms and provisions
21  of this policy?
22      A    What provision of the policy?
23      Q    I believe there's a provision
```



EXHIBIT F

Page 113

 1  I heard from your partner, and we've been
 2  communicating over a period of time. And
 3  for the first time about -- and I didn't
 4  know who was going to come here this
 5  morning. He implied -- no. He stated
 6  that they had -- you all had a major death
 7  case that has come in, and somebody else
 8  might come down. And that's the way it
 9  was left. So I didn't know who was going
10  to be here this morning. And I just think
11  --
12      Q    Well, what does that mean?
13      A    What I'm saying is, I just
14  think that if MetLife wants to establish
15  and wants to settle a claim, they would
16  have one person that I could deal with. I
17  shouldn't have to deal with seven
18  different persons on this.
19      Q    I mean, for some time I know
20  you and my partner have been going through
21  the process of trying to schedule this
22  examination under oath. And that's taken
23  quite a bit of time, hasn't it?

Page 114

 1      A    Well, we're here. So -- but
 2  I'm just saying that I have never, during
 3  my fifty-one years of practice, seen an
 4  insurance company that has had seven
 5  different people deal with something to
 6  get an adjustment, and during that whole
 7  period of time, they have only moved a
 8  thousand and something dollars.
 9      Q    Have you moved any off your
10  nine hundred and ninety-nine thousand?
11      A    Beg your pardon?
12      Q    Have you made a
13  counterproposal since your nine hundred
14  and ninety-nine thousand?
15      A    Nobody has asked me for one.
16  But the whole thing is -- and I guess I'm
17  a little concerned because the first
18  insurance company I ever heard in my life
19  was Metropolitan Life Insurance Company.
20  When I was a boy living on the west side
21  of Montgomery, my mother, who died when
22  she was ninety-seven, had -- she didn't
23  have the policy at the time she died. But

Page 115

 1  when much younger, I used to walk from my
 2  house to Court Square to take her premiums
 3  on a Metropolitan Life policy.
 4      And the only reason I ended up
 5  getting a MetLife policy in the first
 6  place is because Charlie Hardy, whom I
 7  have known for years, convinced me that he
 8  was the local agent. That if you have any
 9  problems, I'm going to be right here to
10  help you solve them. If you have any
11  claims, I'm going to be here to help you
12  resolve them. And I relied on what
13  Mr. Hardy said.
14      And then when the fire comes, I get
15  little or no cooperation or little or no
16  assistance. And then months and months go
17  by and the company says absolutely
18  nothing. And then it's now been sitting
19  here for a year, and I don't consider to
20  come from two thousand to twenty-one
21  hundred dollars if anybody is really
22  trying to settle the claim. And I have
23  been substantially damaged as a result of

Page 116

 1  the manner in which Met has offered. I
 2  don't think they're acting in good faith.
 3      Q    That's your opinion?
 4      A    That's my opinion.
 5      Q    You don't dispute the fact
 6  that an insurance company has a right to
 7  adjust a claim to try to obtain
 8  information it needs to evaluate the
 9  claim, do you?
10      A    I think that's right. And I
11  think they could have gotten it a year
12  ago.
13      Q    And you talked about there
14  being a delay in time. And I recall -- I
15  went through all this correspondence. I
16  don't recall any correspondence from you
17  during this delay in time asking what the
18  status of the claim was.
19      A    I shouldn't have to. I
20  shouldn't have to. I didn't have to --
21      Q    Is there any -- is there any
22  --
23      A    I didn't have to do it with

American Court Reporting
toll-free (877) 320-1050

30 (Pages 117 to 119)

Page 117

1  the other company.
2      Q    At the time that there was a
3  delay, weren't you in fact in the process
4  of dealing with State Farm, trying to get
5  those payments resolved under the business
6  policy?
7      A    It had nothing to do with
8  this, because I had already -- I did the
9  first time. That's why we took the time.
10 And I told my folks who was getting this
11 stuff together, I said, let's go through
12 everything, identify everybody's items,
13 and then we won't have to do it when they
14 come back. And I'll be if I gave it to
15 him, and he said I'm not going to even
16 look at it. You go through and pull it
17 out. And I don't think that's a good way
18 to do it.
19     Q    Anything else?
20         MR. GRAY: Let me just ask
21 this. I think you're finished. What else
22 is needed for Metropolitan to adjust this
23 claim, and when can we expect to hear some

Page 118

1  type of response?
2          MR. WOLTER: Well, I'll get a
3  report to them and give them my opinion,
4  and hopefully we'll get something back to
5  you in the next couple of weeks.
6          MR. GRAY: Fair enough.
7          MR. WOLTER: As far as I know,
8  we've got all the documents we need.
9          THE WITNESS: Well, that's
10 what I wanted to know.
11         MR. WOLTER: Thank you.
12
13     FURTHER DEPONENT SAITH NOT

Page 119

CERTIFICATE

STATE OF ALABAMA   )
MONTGOMERY COUNTY )
       I hereby certify that the above
and foregoing testimony was taken down by
me in stenotype, and the questions and
answers thereto were transcribed by means
of computer-aided transcription, and that
the foregoing represents a true and
correct transcript of the testimony given
by said witness upon said hearing.
       I further certify that I am
neither of counsel nor of kin to the
parties to the action, nor am I in anywise
interested in the result of said cause.


                GWENDOLYN P. TIMBIE, CSR


My Commission Expires
March 4, 2009

www.AmericanCourtReporting.com
December 28, 2005